Jakob B. Halpern
jhalpern@saiber.com
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
T: (973) 622-3333
F: (973) 622-3349

Scott R. Brown (pro hac vice to be filed)
srbrown@hoveywilliams.com
C. Blair Barbieri (pro hac vice to be filed)
bbarbieri@hoveywilliams.com
Mackenzie M. Lawrence (pro hac vice to be filed)
klawrence@hoveywilliams.com
**HOVEY WILLIAMS LLP**
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
T: (913) 647-9050
F: (913) 647-9057

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIGNAL MEDIA LIMITED,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SIGNAL INSIGHTS, INC.,<br><br>　　　　Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Signal Media Limited, doing business as Signal AI ("Plaintiff" or "Signal Media"), for its complaint against Defendant Signal Insights, Inc. ("Defendant" or "Signal Insights"), alleges the following:

1

## Nature of the Case

1. This is an action for trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

## Parties

2. Signal Media is a company organized and existing under the laws of England and having its principal place of business at 1st Floor, Sackville House, 143-149 Fenchurch Street, London, England EC3M 6BN.

3. Upon information and belief, Signal Insights is a Delaware corporation with its principal place of business at 33 Hilltop Drive, North Caldwell, New Jersey 07006 and having its headquarters at an unknown location in New York City, New York.

## Jurisdiction and Venue

4. This action arises under the United States trademark laws, Title 15, United States Code. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338(a)–(b), and 1367, and 15 U.S.C. § 1121.

5. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant is headquartered in New York City, New York, regularly conducts business in this judicial district, and derives substantial revenue in this judicial district, including without limitation, by selling services to New York-based customers and promoting services to New York businesses throughout this judicial district. Thus, upon information and belief, Defendant is subject to this Court's specific and general personal jurisdiction.

6. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) because, upon information and belief, a substantial part of the events giving rise to the claims occurred in this judicial district and Defendant is subject to personal jurisdiction in this judicial district.

7. Venue is also proper in this District because Signal Media's U.S. headquarters and Defendant's headquarters are located within this District.

**Facts and Allegations Common to All Claims**

8. Signal Media is a United Kingdom company that conducts business in the United States from its UK headquarters and through its wholly-owned U.S. subsidiary, Signal Media Intelligence Inc., a Delaware corporation formed on April 11, 2016, with its office and principal place of business operations located at 440 Park Avenue South, 14th Floor, New York City, New York 10016.

9. Signal Media provides advertising, marketing, and business consultation services, including without limitation business intelligence services, to a wide variety of businesses, focused on empowering businesses with marketing insights and recommended strategies to elevate their clients' promotional reach while managing associated risks and effectively understanding competitors within their clients' relevant markets.

10. Specifically, among other things, Signal Media offers advertising and marketing services, as well as related software services, that monitor, track, and analyze online content and publications to manage, enhance, and optimize clients' advertising and marketing efforts and their business reputations within the field of the relevant industry and industry competitors (collectively, "Signal Media's Services").

11. Since at least as early as February 2016, Signal Media has continuously used the SIGNAL® trademark to promote and sell Signal Media's Services in the United States.

12. Signal Media owns U.S. Registration No. 5240521 for the standard character trademark, SIGNAL®, in connection with the following services:

"advertising and marketing services; marketing consultation services; business consulting services in the field of creation, delivery and measurement of effectiveness of digital advertising and marketing; online media monitoring services, using computer software to automatically monitor internet websites, online publications and content, and other media for customer-specific topics and to capture relevant content on those topics, and providing documentation and analysis of that online content to others for business *, none of the aforementioned services relating to computer software and applications for person-to-person messaging, communication, exchange, or transmission of digital content, audio, and video, social networking, or enabling the electronic transfer of money" in Class 035;

and

"software as a service (SAAS) featuring computer software that provides analysis of contents of websites and online publications to determine the relevance of the website for customer's marketing purposes; software as a service (SAAS) featuring computer software for automated media monitoring services, namely, monitoring internet websites and online publications for customer-specified topics, and providing documentation and analysis of media content to others for business purposes; software as a service (SAAS) featuring computer software for monitoring and analyzing legal, financial and regulatory data; software as a service (SAAS) featuring computer software for data analysis of market and competitor trends; application service provider (ASP) featuring software for displaying, sharing, transmitting, tracking, tagging, collecting, analyzing, managing, uploading, and downloading images, photographs, electronic media, and a wide variety of data; application service provider (ASP) featuring software allowing others to tag, capture, analyze, target, share and monetize demographic, lifestyle, consumer purchasing decisions, and online behavioral data; application service provider (ASP) featuring software for web analytics and measuring consumer purchasing decisions, online behavioral data, web user behavior, brand awareness and brand engagement; software as a service (SAAS) featuring computer software to display, share, transmit, track, tag, collect, analyze, manage, upload, and download images, photographs, electronic media, and data *, none of the aforementioned services relating to computer software and applications for person-to-person messaging, communication, exchange, or transmission of digital content, audio, and video, social networking, or enabling the electronic transfer of money" in Class 042 (also, "Signal Media's Services").

A copy of the U.S. Registration Certificate for U.S. Registration No. 5240521, issued by the United States Patent and Trademark Office ("USPTO"), and the current status printout obtained from the USPTO's Trademark Status & Document Retrieval ("TSDR") System, are attached as **Exhibit A.**

13.     The application for U.S. Registration No. 5240521 was filed on November 21, 2016, claims February 29, 2016 as the date of first use in interstate commerce, and matured to

4

registration on July 11, 2017; thus, while Signal Media has used the SIGNAL® trademark in connection with Signal Media's Services since at least as early as February 29, 2016, Signal Media has constructive priority in the SIGNAL® trademark as of November 21, 2016, the application filing date for U.S. Registration No. 5240521.

14. Signal Media declared, and the USPTO has acknowledged and accepted, that its SIGNAL® trademark has reached incontestable status. See Exhibit A.

15. The Registration Certificate for U.S. Registration No. 5240521 (Exhibit A) is *prima facie* evidence of Signal Media's ownership of the federal registration for the SIGNAL® trademark identified therein, its validity, and Signal Media's exclusive nationwide right to use the SIGNAL® trademark in connection with Signal Media's Services.

16. In November 2018, Signal Media registered and began using the domain name *signal-ai.com*, with all Signal Media employee emails converted to introduce, use, and expose customers to Signal Media's new iteration of the SIGNAL® Mark—SIGNAL AI.

17. At least as early as August 2019, Signal Media began using the virtually identical trademark, SIGNAL AI, in addition to the stand-alone SIGNAL® trademark, to advertise and promote Signal Media's Services on Signal Media's website and marketing materials.

18. Since then, Signal Media has continuously used the SIGNAL AI trademark to promote and sell Signal Media's Services in the United States.

19. Signal Media owns U.S. Registration No. 7089493 for the SIGNAL AI design mark shown below:



20. Signal Media's U.S. Registration No. 7089493, for the SIGNAL AI (& Design)® trademark covers the following services (as requested to be amended):

"Advertising and marketing services; marketing consultation services; business consulting services in the field of creation, delivery and measurement of effectiveness of digital advertising and marketing; business consultancy services, namely, online media monitoring services, using computer software to automatically monitor internet websites, online publications and content, and other media for customer specific topics and to capture relevant content on those topics, and providing documentation and analysis of that online content to others for business; none of the aforementioned services relating to computer software and applications for person-to-person messaging, communication, exchange, or transmission of digital content, audio, and video, social networking, or enabling the electronic transfer of money" in Class 035;

and

"Software as a service (SAAS) featuring computer software that provides analysis of contents of websites and online publications to determine the relevance of the website for customer's marketing purposes; software as a service (SAAS) featuring computer software for automated media monitoring services, namely, monitoring internet websites and online publications for customer-specified topics, and providing documentation and analysis of media content to others for business purposes; software as a service (SAAS) featuring computer software for monitoring and analyzing legal, financial and regulatory data; software as a service (SAAS) featuring computer software for data analysis of market and competitor trends; application service provider (ASP) featuring software for displaying, sharing, transmitting, tracking, tagging, collecting, analyzing, managing, uploading, and downloading images, photographs, electronic media, and a wide variety of data; application service provider (ASP) featuring software allowing others to tag, capture, analyze, target, share and monetize demographic, lifestyle, consumer purchasing decisions, and online behavioral data; application service provider (ASP) featuring software for web analytics and measuring consumer purchasing decisions, online behavioral data, web user behavior, brand awareness and brand engagement; software as a service (SAAS) featuring computer software to display, share, transmit, track, tag, collect, analyze, manage, upload, and download images, photographs, electronic media, and data; none of the aforementioned services relating to computer software and applications for person-to-person messaging, communication, exchange, or transmission of digital context, audio, and video, social networking, or enabling the electronic transfer of money" in Class 042 (also, "Signal Media's Services").

A copy of the U.S. Registration Certificate for Registration No. 7089493 and the current status printout obtained from the USPTO's TSDR System are attached as **Exhibit B.**

21. The application for U.S. Registration No. 7089493 was filed on September 29, 2021, on a 44(d) filing basis, claiming priority in Signal Media's foreign application, which subsequently issued in the United Kingdom as Registration No. UK00003699364, effectively causing the priority date of Signal Media's U.S. federal rights in the SIGNAL AI (& Design)® trademark to be at least as early as September 23, 2021.

22. The Registration Certificate for U.S. Registration No. 7089493 (Exhibit B) is *prima facie* evidence of Signal Media's ownership of the federal registration for the SIGNAL AI (& Design)® trademark identified therein, its validity, and Signal Media's exclusive nationwide right to use the SIGNAL AI (& Design)® trademark in connection with Signal Media's Services.

23. Collectively, Signal Media's SIGNAL® and SIGNAL AI (& Design)® trademarks will be referred to hereafter as the "SIGNAL® Marks".

24. Signal Media uses and has continuously used the SIGNAL® Marks in connection with Signal Media's Services for an extensive period of time, with use of the SIGNAL® trademark dating back to at least as early as 2016.

25. At all relevant times, Signal Media has continuously, actively, and prominently promoted the SIGNAL® Marks on Signal Media's website, electronic and print advertising, social media outlets, and at conferences and networking events for Signal Media's Services.

26. For example, for many years, the SIGNAL® Marks have appeared on the home page and other multiple pages of Signal Media's website at www.signal-ai.com.

27. Signal Media's social media advertising also uses the SIGNAL® Marks in promotional posts and content published on Twitter, LinkedIn, and YouTube.

28. Over the years, Signal Media has invested and spent substantial time, money, and effort to advertise, develop, and promote the SIGNAL® Marks to identify Signal Media as the source of Signal Media's Services.

29. By virtue of extensive advertising, promotion, and sales of Signal Media's Services identified with and by the SIGNAL® Marks, and as a result of Signal Media's extensive and continuous use of the SIGNAL® Marks in connection with Signal Media's Services, the SIGNAL® Marks have come to be associated with Signal Media, and Signal Media has achieved significant, valuable consumer goodwill in connection with its SIGNAL® Marks.

30. On information and belief, Signal Insights is infringing Signal Media's rights in the SIGNAL® Marks by using the confusingly similar SIGNAL INSIGHTS mark, as shown below, in connection with Defendant's closely related, if not overlapping and/or directly competitive, advertising and marketing services that also focus on monitoring, tracking, and anlyzing online content to manage, optimize, and enhance advertising and marketing efforts and business reputations within the field of the relevant industry and industry competitors ("SIGNAL INSIGHTS Mark"):



Last accessed on May 29, 2024, available at https://signalinsights.io/.



Last accessed on May 28, 2024, available at https://signalinsights.io/about-us/.

31.     Defendant's services advertised and sold in connection with the SIGNAL INSIGHTS Mark are closely related to, overlapping, and directly competitive with Signal Media's Services offered under the SIGNAL® Marks.

32.     Defendant's marketing and sales of services provided in connection with the SIGNAL INSIGHTS Mark are directed to the same types of customers and consumers as those to which Signal Media markets and sells its services under its SIGNAL® Mark.

10

33. Defendant's SIGNAL INSIGHTS Mark is identical, nearly identical, and/or substantially similar in sound, appearance, and commercial impression to Signal Media's SIGNAL® Marks.

34. Defendant's SIGNAL INSIGHTS Mark encompasses the entirety of Signal Media's SIGNAL® trademark and the dominant "SIGNAL" element of the SIGNAL AI (& Design)® trademark, and is therefore identical, at least in prominent part, to Signal Media's SINGAL® Marks.

35. Signal Media's SIGNAL® Marks and Defendant's SIGNAL INSIGHTS Mark are comprised of the same first and dominant element – SIGNAL.

36. Defendant's use of the SIGNAL INSIGHTS Mark with closely related services has caused confusion and is likely to continue to cause confusion with Signal Media's SIGNAL® Marks and Signal Media's Services.

37. Upon information and belief, Defendants adopted and first began using the SIGNAL INSIGHTS Mark many years after Signal Media's adoption, first use, and federal registration of the SIGNAL® trademark.

38. As a result of Defendant's marketing and sale of its services in connection with the SIGNAL INSIGHTS Mark, consumers have been and are likely to continue to be confused such that consumers will erroneously believe that Defendant is affiliated, connected, or associated with, or in some way related to, Signal Media and Signal Media's Services advertised, promoted, and sold under its SIGNAL® Marks.

39. On or about October 11, 2022, Signal Media sent a letter to Defendant, notifying it of Signal Media's trademark rights and infringement claims relating to Signal Media's

11

federally registered SIGNAL® Mark with respect to Defendant's unauthorized use of the SIGNAL INSIGHTS Mark.

40. The parties engaged in discussions to resolve their dispute; but the parties were unable to reach an agreement regarding Defendant's desire to continue using the SIGNAL INSIGHTS Mark.

41. To date, Defendant has refused to cease use of the SIGNAL INSIGHTS Mark in connection with Defendant's aforementioned services.

42. Defendant's use of the SIGNAL INSIGHTS Mark continues to this day and Defendant's ongoing infringement of the SIGNAL® Marks and other Lanham Act violations are willful and intentional and continue to damage Signal Media.

## **Count I – Trademark Infringement under the Lanham Act**
## **15 U.S.C. § 1114**

43. Signal Media realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

44. Signal Media owns the SIGNAL® Mark and has priority rights in and to the SIGNAL® Mark that date back to at least as early as 2016.

45. Signal Media has used its SIGNAL® Mark in connection with Signal Media's Services continuously for an extended period of time to promote and sell its advertising and marketing services throughout the United States.

46. Signal Media's extended and continuous use of its SIGNAL® Mark in connection with its advertising and marketing services has indelibly impressed on the minds of the relevant

consuming public that the SIGNAL® Mark identifies Signal Media as the source of its advertising and marketing services and/or its business intelligence services.

47. Defendant has adopted and began using the SIGNAL INSIGHTS Mark long after Signal Media's first use and federal registration of the SIGNAL® Mark; thus, Defendant's use of SIGNAL INSIGHTS post-dates Signal Media's priority rights in the incontestable SIGNAL® Mark.

48. Signal Media's SIGNAL® Mark and Defendant's SIGNAL INSIGHTS Mark are visually and aurally similar and have similar commercial connotations, rendering overall similar impressions that are likely to confuse consumers.

49. Defendant continues to use a colorable imitation of Signal Media's federally registered SIGNAL® Mark in connection with Defendant's advertising and marketing services that are closely related to, if not identical, overlapping, and/or competitive with, Signal Media's Services.

50. Defendant's adoption and use of the SIGNAL INSIGHTS Mark to identify Defendant's services constitutes use of a copy or colorable imitation of Signal Media's SIGNAL® Mark and is likely to cause confusion or mistake, or to deceive the purchasing public into believing that Defendant's services emanate from the same source as the services provided by Signal Media, or that there is some connection, sponsorship, or affiliation between the services of Signal Media and Defendant, all of which are contrary to fact and are damaging and detrimental to Signal Media.

51. Because Signal Media has no control over the nature and quality of Defendant's services, any failure, neglect, or default by Defendant in providing its services will reflect

adversely on Signal Media as the believed source or origin thereof, which will hinder Signal Media's efforts to continue to protect its outstanding reputation in the industry and subject Signal Media to loss of sales of services and loss of the considerable expenditures it has made to promote its services in association with the SIGNAL® Mark, all to the irreparable harm of Signal Media.

52. Defendant's willful and intentional use of the infringing SIGNAL INSIGHTS Mark is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's advertising and marketing services and constitutes trademark infringement in violation of 15 U.S.C. § 1114.

53. As a result of Defendant's violation of 15 U.S.C. § 1114, Signal Media is entitled to damages, Defendant's profits, an award of attorney's fees and costs, and any and all other relief authorized under 15 U.S.C. § 1117.

54. Upon information and belief, Defendant has deliberately and willfully infringed Signal Media's SIGNAL® Mark, despite being on notice of Signal Media's prior rights, and such intentional and willful conduct makes this an exceptional case, further entitling Signal Media to treble damages, and recovery of Signal Media's attorney fees under 15 U.S.C. § 1117(a).

55. As a result of Defendant's violation of 15 U.S.C. § 1114, Signal Media has been and will continue to be irreparably harmed unless this Court enjoins Defendants under 15 U.S.C. § 1116.

## Count II – Unfair Competition and False Designation of Origin under the Lanham Act
## 15 U.S.C. § 1125(a)

56.     Signal Media realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

57.     Defendant's use of the SIGNAL INSIGHTS Mark constitutes a false designation of origin because its use in connection with Defendant's services is likely to cause confusion, cause mistake, or deceive others as to the affiliation, connection, or association of Defendant with Signal Media, or as to the origin, sponsorship, and/or approval of Defendant's services and commercial activities by Signal Media, and therefore violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Upon information and belief, Defendant's conduct is willful and intentional with the purpose of misleading the public into believing that Defendant's advertising and marketing services are in some way sponsored by, affiliated with, or connected to Signal Media's Services, which is contrary to fact and damaging and detrimental to Signal Media.

59.     As a result of Defendant's intentional and willful acts of unfair competition and false designation of origin, Signal Media is entitled to damages, Defendant's profits, attorneys' fees and costs, and any and all other relief authorized by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

60.     Defendant's unfair competition and false designation of origin was willful and intentional, further entitling Signal Media to treble damages, and because this is an exceptional case, recovery of Signal Media's attorney fees. 15 U.S.C. § 1117(a).

61. As a result of Defendant's violation of 15 U.S.C. § 1125(a), Signal Media has been and will continue to be irreparably harmed unless this Court enjoins Defendants under 15 U.S.C. § 1116.

### Count III – Common Law Trademark Infringement

62. Signal Media realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

63. Signal Media owns all rights, title, and interest in and to the SIGNAL® Marks, including all common law rights in such marks.

64. Defendant, without authorization from Signal Media, has used and is continuing to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to Signal Media's SIGNAL® Marks.

65. The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the relevant trade industry, as to whether Defendant's services originate from, or are affiliated with, sponsored by, or endorsed by Signal Media.

66. Defendant has acted with knowledge of Signal Media's ownership in the SIGNAL® Marks and with deliberate intention or willful blindness to unfairly benefit from the significant goodwill Signal Media has established in connection with its SIGNAL® Marks.

67. Defendant's acts constitute trademark infringement in violation of the common laws of the State of New York.

68. Upon information and belief, Defendant has made and will continue to make substantial profits, gains, and/or benefits to which it is not entitled, by law or equity.

69. Defendant's acts are greatly and irreparably damaging to Signal Media and will continue to damage Signal Media unless enjoined by this Court, such that Signal Media is without an adequate remedy at law.

### Count IV – Common Law Unfair Competition

70. Signal Media realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

71. The foregoing acts of Defendant constitute unfair competition in violation of the common laws of the State of New York.

72. Upon information and belief, Defendant has made and will continue to make substantial profits, gains, and/or benefits to which it is not entitled, by law or equity.

73. Defendant's acts are greatly and irreparably damaging to Signal Media, and will continue to damage Signal Media unless enjoined by this Court, such that Signal Media is without an adequate remedy at law.

### Prayer for Relief

Based on the foregoing, Signal Media prays for judgment against Defendant as follows:

A. Enter an order that Defendant's acts alleged in this Complaint constitute trademark infringement, unfair competition, and false designation of origin under the Lanham Act in violation 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and New York common law.

B. Preliminarily and permanently enjoin and restrain Defendant, including its officers, directors, agents, dealers, representatives, servants, and employees, and all others acting in concert with Defendant, from using the SIGNAL INSIGHTS Mark, or any other mark that imitates or is confusingly similar to or in any way similar to Signal Media's SIGNAL® Marks,

or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of the parties' respective advertising and marketing services or services;

C. Order an accounting of Defendant's profits from its infringing and unfair acts pursuant to 15 U.S.C. § 1117;

D. Grant to Signal Media an award of its damages, together with prejudgment interest, for the lost sales, loss of goodwill, and other damages suffered by Signal Media as a result of the infringement, unfair competition, and false designation of origin by Defendant, an award trebling said damages as a result of the willful nature of the infringement, and Defendant's profits, enhanced profits, and/or statutory damages, pursuant to 15 U.S.C. §§ 1117(a) and (b);

E. Order Defendants to transfer all domain name registrations that consist of or contain the SIGNAL INSIGHTS Mark, or any other mark that imitates or is confusingly similar to or in any way similar to Signal Media's SIGNAL® Marks, and to delete all social media accounts or other online accounts that consist of or contain the SIGNAL INSIGHTS Mark, or any other mark that imitates or is confusingly similar to or in any way similar to Signal Media's SIGNAL® Marks;

F. Order Defendants to deliver up for destruction pursuant to 15 U.S.C. § 1118 all packaging, labels, signs, prints, advertising or promotional material, and the like in the possession, custody, or under the control of Defendant bearing the SIGNAL INSIGHTS Mark, or any other trademark found to infringe Signal Media's SIGNAL® Marks;

G. Declare this to be an exceptional case and grant to Signal Media its attorney's fees and costs incurred in this action, pursuant to 15 U.S.C. § 1117 and other applicable laws; and

H. Grant to Signal Media such further relief as may be equitable and proper.

**Jury Demand**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Signal Media demands a trial by jury.

Dated: June 10, 2024

Respectfully Submitted,

/s Jakob B. Halpern
Jakob B. Halpern
jhalpern@saiber.com
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
T: (973) 622-3333
F: (973) 622-3349

Scott R. Brown (pro hac vice to be filed)
srbrown@hoveywilliams.com
C. Blair Barbieri (pro hac vice to be filed)
bbarbieri@hoveywilliams.com
Mackenzie M. Lawrence (pro hac vice to be filed)
klawrence@hoveywilliams.com
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
T: (913) 647-9050
F: (913) 647-9057

ATTORNEYS FOR PLAINTIFF